AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Search of

INFORMATION ASSOCIATED WITH RAYP9@LIVE.COM THAT IS STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, USA

Case No: 4:26 MJ 8000 SRW

**FILED UNDER SEAL**

SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property

SEE ATTACHMENT A

located in the WESTERN District of WASHINGTON, there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**I state under the penalty of perjury that the following is true and correct.**

*Applicant's signature*

Joel D. Bingaman, Special Agent, FBI

*Printed name and title*

**Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.**

Date: 01/09/2026

*Judge's signature*

City and state: St. Louis, MO

Honorable Stephen R. Welby, U.S. Magistrate Judge

*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: INFORMATION ASSOCIATED WITH RAYP9@LIVE.COM THAT IS STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION, USA | Case No. 4:26 MJ 8000 SRW<br><br>**FILED UNDER SEAL**<br><br>SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, JOEL D. BINGAMAN, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), as well as Federal Rule of Criminal Procedure 41, for information associated with a certain account, which information is stored at premises controlled by Microsoft Corporation, USA ("Microsoft"), an email provider headquartered at 1 Microsoft Way, Redmond, Washington 98052. The information to be searched is described in the following paragraphs and in Attachment A. The search warrant would require Microsoft to disclose to the United States copies of the information (including the content of communications) further described in Attachment B. Upon receipt of the information described in Section I of Attachment B, United States-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since April 2006. I am currently assigned to the FBI's St. Louis Division where I investigate complex financial crimes to include investigations of alleged criminal violations of Title 18, United States Code, Sections 1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud), and 1956 and 1957 (money laundering). Prior to investigating complex financial crimes, I was

assigned to gang and narcotics investigations primarily focused on conspiracies associated with criminal offenses prohibited by Title 21, United States Code, Sections 841 and 846. Throughout my FBI career, I have personally participated in investigations that involved the following techniques: questioning of witnesses; interviewing confidential human sources; conducting physical surveillance; conducting undercover operations that involved the purchase of drugs and other contraband; consensual and court authorized monitoring and recording of telephonic communications; gathering physical evidence; analyzing telephone pen registers and caller identification system data; analyzing data from mobile telephones and other electronic devices; and executing search warrants, seizure warrants, and arrest warrants. I have also participated in numerous investigations involving money laundering and am familiar with and have received training regarding the techniques employed by criminals to hide the proceeds derived from their illegal activities from detection by law enforcement. Throughout the course of my career, I have led and participated in numerous investigations to locate and apprehend fugitives from federal and state prosecutions to include fugitives that are charged with violations of Title 18, United States Code, Section 1073 (unlawful flight to avoid prosecution). I have participated in the execution of numerous search warrants involving various types of investigations, including investigations of financial crimes. Many of the search warrants resulted in the seizure of documents, computers, cell phones and/or "smart phones," magnetic storage media for computers, other electronic media, and other items evidencing violations of federal criminal laws. As a federal agent, I am authorized to investigate violations of the laws of the United States and to seek forfeiture of property under the authority of the United States.

3. The facts included in this affidavit come from my personal knowledge and observations, my training and experience, my collection of statements and information from

witnesses and other law enforcement officers, and my review of records, documents, and other evidence obtained during this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts included in this affidavit, there is probable cause to believe that violations of federal law, including, but not limited to, violations of 18 U.S.C. § 1343 (wire fraud), have been committed by Raymond Porter ("**Porter**"), who is the user of the **Subject Account** (defined below, as well as other persons known and unknown. There is also probable cause to search the location described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes, as described in Attachment B.

## LOCATION TO BE SEARCHED

5. The location to be searched is:

RAYP9@LIVE.COM (the "**Subject Account**").

The **Subject Account** is located at premises controlled by Microsoft, which is headquartered at 1 Microsoft Way, Redmond, Washington 98052, as further described in Attachment A. The items to be reviewed and seized from the **Subject Account** are described in Attachment B.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND CONCERNING EMAIL

7. In my training and experience, and based on a review of publicly available information, I have learned that Microsoft provides a variety of online services, including electronic mail ("email") access, to the public. Microsoft previously allowed subscribers to obtain email accounts such as the **Subject Account** at the domain name live.com. While Microsoft no longer allows subscribers to obtain email accounts at the domain name live.com, it currently allows subscribers to obtain email accounts at the domain names outlook.com and hotmail.com and continues to support legacy accounts such as the **Subject Account** that were originally subscribed at the domain name live.com through the infrastructure and interface of outlook.com.

8. Subscribers of a Microsoft email account, including a live.com legacy account such as the **Subject Account**, obtain such an account by registering with Microsoft. During the registration process for an account, Microsoft asks subscribers to provide basic personal information. Therefore, the computers of Microsoft are likely to contain stored electronic communications (including retrieved and unretrieved email for Microsoft subscribers) and information concerning subscribers and their use of Microsoft services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

9. In addition to emails, subscribers can also store other files with Microsoft, such as address books, contact or buddy lists, calendar data, pictures (in addition to ones attached to emails), chats, and other files, on servers maintained and/or owned by Microsoft. In my training and experience, evidence of who was using an email account may be found in address books,

contact or buddy lists, calendar data, chats, emails in the account, and attachments to emails, including pictures and files.

10. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

11. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

12. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

13. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contact lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the IP addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account

owner. Additionally, information stored on the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

14. In general, an email that is sent via Microsoft is stored in the subscriber's "mailbox" on Microsoft's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Microsoft's servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Microsoft's servers for an extended period of time and, in some circumstances, indefinitely.

**PROBABLE CAUSE**

15. The FBI and the United States Department of Health and Human Services, Office of Inspector General (HHS) (together, the "investigators") are investigating **Porter** for his suspected involvement in preparing and submitting fraudulent COVID-19 loan applications (specifically Economic Injury Disaster Loan ("EIDL") applications and Paycheck Protection Program ("PPP") loan applications) and related documents on behalf of borrowers in exchange for the borrowers paying him—through his business, Design Real Estate Solutions LLC d/b/a Design Retail Equipment Solutions ("Design Retail")—a portion of the COVID-19 loan proceeds after the loans were funded by either the United States Small Business Administration (SBA) or a third-party lender that participated in the PPP.

16. To this point, investigators have identified more than $4 million worth of suspected fraudulent COVID-19 loans, from which the borrowers (to the extent that the borrowers were not businesses owned by **Porter** or his family members) appear to have paid **Porter**, through his business, Design Retail, more than $500,000 worth of the loan proceeds. The borrowers' payments to **Porter's** business, Design Retail, were deposited into **Porter's** business bank account for Design Retail shortly after the borrowers received their loan proceeds.

17. On or about November 19, 2025, the United States obtained a search warrant for **Porter's** business premises located at 4625 Lindell Blvd., Suite 209, St. Louis, Missouri 63108. Case No. 4:25-MJ-1377-JMB. That search warrant authorized investigators to search and seize, among other things, electronic devices, including cell phones. *Id.*

18. On or about November 24, 2025, investigators executed that search warrant and seized, among other things, two of **Porter's** cell phones. A subsequent search of those cell phones revealed that **Porter** used email, including the **Subject Account**, to communicate with others regarding suspected fraudulent COVID-19 loans.

19. On one of **Porter's** cell phones, investigators found a text message string between **Porter** and a contact saved as "David Holmon" ("Holmon"). The text message string appears to have been linked to the **Subject Account**, as shown below.

| | |
|---|---|
| +13148147938 | Ray Porter (owner) |
| rayp9@live.com | Ray Porter (owner) |
| +13142833402 | Ray Porter (owner) |
| +13145655455 | David Holmon |
| 13142833402 | Ray Porter (owner) |

20. The text message string showed that, after the pandemic started in or around March 2020, **Porter** and Holmon regularly exchanged texts regarding EIDL and PPP loans. In these texts, **Porter** and Holmon shared, among other things, information regarding individuals and businesses for which **Porter** is suspected of having submitted, or of having assisted with the submission of, fraudulent COVID-19 loan applications.

21. For example, on or about August 2, 2020, Holmon sent **Porter** text messages in which Holmon provided Porter with information for a business called "Mad Bird 1 LLC," and instructed **Porter** to list Holmon's father, Dwight Holmon, as the 91% owner of the business and to "just add the income and expenses." In these messages, Holmon did not provide any income and expense information for Mad Bird 1. The EIDL loan amount for which a borrower was eligible was based solely on such income and expense information, and the same was true for some PPP loans.

22. As part of this investigation, the investigative team learned that Mad Bird 1 obtained an EIDL loan of $150,000, which was funded on or about August 12, 2020 after an application was submitted to the SBA on or about August 3, 2020 (the day after Holmon provided **Porter** with information for Mad Bird 1).

23. Mad Bird 1's loan application represented 2019 gross revenues of $675,500 and cost of goods sold of $225,375, listed Dwight Holmon as the 91% owner of the business, and disclosed **Porter** and **Porter's** business, Design Retail, as the "preparer" for a fee "charged or agreed upon" of $500. Mad Bird 1's loan application reflects that it was submitted by a device that the SBA captured as using the IP address "2600:1700:1fe0:e60:f033:1a9b:fa26:1d3e." Subscriber records from AT&T for that IP address list **Porter** as the accountholder and **Porter's** home address (5623 Bartmer, St. Louis, MO 63112) as the service address.

24. Mad Bird 1 does not have any tax returns on file with the IRS for the period from 2018 to 2022. Dwight Holmon's tax records on file with the IRS for that same time period do not reflect any involvement by him in the business of Mad Bird 1.

25. The SBA's loan records reflect that the SBA contacted Dwight Holmon regarding Mad Bird 1's EIDL loan on or about February 28, 2022. According to those records, during a discussion with an SBA representative, Dwight Holmon stated, among other things, that "he does not have a loan with SBA or a business and that he is retired," that the email listed on the application was "not his and that his son [David Holmon] has a business and he hopes he [his son] did not use his name to get a loan" and that, when discussing the preparer, Dwight Holmon stated that **Porter** "is his son's friend."

26. Business bank account records for Mad Bird 1 reflect that the account was opened on or about July 30, 2020 (just four days before the EIDL loan application was submitted on or about August 3, 2020), and that the only authorized signatory on the account was Holmon (Dwight Holmon's son).

27. In the text messages between **Porter** and Holmon regarding COVID-19 loans, they regularly instructed each other to check their emails. The snippets of text messages on the next page are some examples of this.

Ray Porter
Does this Business exist?
8/8/2020 1:34:00 PM(UTC-5)
Sources (1)

David Holmon
No but but down home healthcare see the DBA
8/8/2020 1:36:07 PM(UTC-5)
Sources (1)

David Holmon
Name: Latrice Davis

Date of Birth: 12/09/1985

Social Security number: 500905254

Home Address: 13432 Pompeii Dr. Apt. C
Chesterfield, MO 63017
8/8/2020 2:04:58 PM(UTC-5)
Sources (1)

David Holmon
Check email for statements from simplysalsastl@hotmail address
8/8/2020 2:33:32 PM(UTC-5)
Sources (1)

David Holmon
Can you get the tax document today .. will send over info
8/13/2020 11:27:08 AM(UTC-5)
Sources (1)

David Holmon
8/13/2020 11:28:08 AM(UTC-5)
Sources (1)

David Holmon
8/13/2020 11:28:27 AM(UTC-5)
Sources (1)

Ray Porter
Yes
8/13/2020 11:30:43 AM(UTC-5)
Sources (1)

David Holmon
Thanks
8/13/2020 11:31:10 AM(UTC-5)
Sources (1)

Ray Porter
Check email
8/13/2020 2:36:31 PM(UTC-5)
Sources (1)

David Holmon
Business Name: Cooper Consulting Firm LLC

EIN Number: 83-1161447

Business Address: 25151 Brookpark Rd #1802, North Olmsted OH 44070

Business Phone: 234-200-6848
8/30/2020 12:02:02 PM(UTC-5)
Sources (1)

David Holmon
When u get out of church send this one in to sba
8/30/2020 12:02:28 PM(UTC-5)
Sources (1)

Ray Porter
Sent paperwork last nite. Copies in your email.
8/31/2020 8:18:10 AM(UTC-5)

28. In text messages between **Porter** and Holmon in or around March 2021, **Porter** advised Holmon, "The house past the extension of PPP last nite to May31. It's on the way to the Senate." In response, Holmon texted **Porter**, "Cool let's get a plan together and get paid." Holmon also wrote, "ok but also let's organize it better and work the hell out of Latrice everyday." **Porter** then wrote, "She can be the lead. She can duplicate tax returns. Two people entering payroll information to the new software. The 940's and 941 are awesome."

29. The "Latrice" to which **Porter** and Holmon were referring is believed to be Latrice Davis ("Davis"), whom they referenced in the text messages shown on the previous page. As part of this investigation, investigators subpoenaed phone records for Davis, whose phone number was determined to be 314-473-9007.

30. During their review of one of **Porter's** cell phones, investigators located a text message string between **Porter** and Davis (there was no contact name saved for Davis, but the text message string was between **Porter** and Davis's phone number, 314-473-9007). In the text messages between **Porter** and Davis, they discussed COVID-19 loan applications, including the preparation of fabricated documents for those applications, such as fabricated tax documents and bank statements. On numerous occasions in the text messages, **Porter** asked Davis to email documents to **Porter**. The only apparent reference to an email address for **Porter** in those text messages was "rayp9", *i.e.*, the **Subject Account** (rayp9@live.com), as shown at the top of the next page. Further, the context of the messages suggests that **Porter** gave Davis access to the **Subject Account**.



+13144739007
I was about to submit Gateway Food but I was checking to make sure you didn't do it already
5/22/2021 7:50:46 PM(UTC-5)
Sources (1)

Ray Porter
No I didn't. Your good.
5/22/2021 7:54:51 PM(UTC-5)
Sources (1)

+13144739007
Give me a call when you get a minute
5/22/2021 8:38:29 PM(UTC-5)
Sources (1)

Ray Porter
I
Sent to
Rayp9
5/22/2021 8:46:35 PM(UTC-5)
Sources (1)



Ray Porter
I need tax returns done for Sabella and High Khu
5/23/2021 2:15:39 PM(UTC-5)
Sources (1)

+13144739007
Ok, which one do you want me to use?
5/23/2021 2:20:33 PM(UTC-5)
Sources (1)

Ray Porter
Chambers Park for Sabella Payroll
Use the internet shoe for High Khu
5/23/2021 2:25:52 PM(UTC-5)
Sources (1)

+13144739007
ok
5/23/2021 2:26:16 PM(UTC-5)
Sources (1)

Ray Porter
Thanks
5/23/2021 2:26:27 PM(UTC-5)



+13144739007
Hey Ray! What type of business is Sabella & High Khu?
5/24/2021 2:20:36 PM(UTC-5)
Sources (1)

Unknown
Sabella Is Daycare. I will text u business address to use
FRDOCUMENT_114827...
application/pdf
~/Library/SMS/Attach...
5/24/2021 2:31:13 PM(UTC-5)
Sources (2)

Ray Porter
Check my email for Sabella
5/24/2021 2:32:26 PM(UTC-5)

31. In addition, **Porter** also instructed COVID-19 loan borrowers whom he is suspected of helping to obtain fraudulent loans to email him at the **Subject Account**.

32. For example, **Porter** is suspected of assisting Reign Restaurant, which was a business owned by Dana Kelly ("Kelly"), with obtaining a fraudulent PPP loan in the amount of $397,210 in or around February 2021, shortly after which Reign Restaurant issued a check to **Porter's** business, Design Retail, in the amount of $39,721 (equal to exactly 10% of the loan amount).

33. In text messages with Kelly regarding COVID-19 loans, **Porter** provided Kelly with the email address for the **Subject Account** when Kelly asked for his email, and **Porter** instructed Kelly to provide others who wanted help with COVID-19 loans with his email address, as reflected by the text message snippets below and at the top of the next page.












34. **Porter** is also suspected of assisting Simon Technologies, which is a business owned by Carlos Mayfield ("Mayfield"), with obtaining, among other COVID-19 loans, a fraudulent EIDL loan in the amount of $150,000 in or around August 2020.

35. In text messages between **Porter** and a contact saved as "Carlos Mayfield" in late July 2020, Mayfield provided **Porter** with the employer identification number (EIN) for Simon Technologies and then asked **Porter** for **Porter's** email address. In response, **Porter** provided

Mayfield with the email address for the **Subject Account**, to which Mayfield confirmed sending an email, as shown by the below snippets.




36. Given the facts set forth above, there is probable cause to believe that the **Subject Account** was used by **Porter** (and others at his direction) to communicate regarding, and to share documents relating to, suspected fraudulent COVID-19 loans.

37. On or about November 18, 2025, before executing the search warrant at **Porter's** business premises, investigators submitted a preservation request to Microsoft requesting that Microsoft preserve records associated with the **Subject Account**.

**CONCLUSION**

38. Based on the forgoing, I request that the Court issue the proposed search warrant. The United States will execute this warrant by serving the warrant on Microsoft. Because the warrant will be served on Microsoft, who will then compile the requested records at a time

convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

39. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give the targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

I state under the penalty of perjury that the foregoing is true and correct.

JOEL D. BINGAMAN
Special Agent
Federal Bureau of Investigation

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on this 9th day of January, 2026.

HON. STEPHEN R. WELBY
United States Magistrate Judge
Eastern District of Missouri

**ATTACHMENT A - 4:26 MJ 8000 SRW**

**Property to Be Searched**

This warrant applies to information associated with:

RAYP9@LIVE.COM (the "**Subject Account**"),

which information is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, USA ("**Microsoft**"), whose headquarters is located at 1 Microsoft Way, Redmond, Washington 98052.

## ATTACHMENT B - 4:26 MJ 8000 SRW

**Particular Things to be Seized**

### I. Information to be disclosed by Microsoft

To the extent that the information described in Attachment A is within the possession, custody, or control of Microsoft, regardless of whether such information is located within or outside of the United States, and including any account information, user device information, user attribution data, emails, email attachments, Office 365 documents, OneDrive files, calendars, contact lists, photos, search history, records, files, logs, or information that has been deleted but is still available to Microsoft, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Microsoft is required to disclose the following information, for the time period of **March 1, 2020 to the present**, to the United States for each account or identifier listed in Attachment A:

a. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b. All records or other information regarding the identification of the subscriber of the account, including, but not limited to, full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. All location history data;

d. All advertising data;

e. Full search history and browser history associated with the account;

f. All services used by the account;

g. All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

h. All records pertaining to communications between Microsoft and any person regarding the account, including contacts with support services and records of actions taken;

i. All billing and payment information;

j. All past and current usernames, account passwords, and names associated with the account;

k. All information identifying the device or devices used to access the account, including a device serial number, a GUID or Global Unique Identifier, Android ID, a phone number, serial numbers, MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"), and any other information regarding the types of devices used to access the account;

l. All activity logs for the account;

m. All photos, videos, and any other files uploaded to the account;

n. All photos, videos, and any other files uploaded by any user that have the account user tagged in them;

o. All location and maps information;

p. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

q. All privacy settings and other account settings, including email addresses or other accounts that the account has blocked;

r. All accounts linked to the account (including where linked by machine cookie or other cookie, creation or login IP address, recovery email or phone number, SMS, or otherwise);

s. For accounts linked by cookie, the date(s) on which they shared a cookie;

t. For accounts linked by SMS number, information regarding whether the numbers were verified; and

u. All cookies associated with or used by any computer or web browser associated with the account, including the IP addresses, dates, and times associated with the recognition of any such cookie.

**The Provider, Microsoft, is hereby ordered to disclose the above information to the United States within 14 days of the date of this warrant.**

## II. Information to be seized by the United States

All records and information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. § 1343 (wire fraud), involving Raymond Porter ("**Porter**") and others, known and unknown, from March 1, 2020 to the present, including, for each account or identifier listed on Attachment A, records and information pertaining to the following matters:

a. Evidence of wire fraud;

b. Evidence of COVID-19 loan fraud;

c. Information and records relating to EIDL loans or PPP loans ("COVID-19 loans"), including, but not limited to, loan applications, loan forgiveness applications, promissory notes, personal guarantees, tax documents, invoices, bank statements, modification requests, employee records, payroll records, and loan disbursement records;

d. Communications with any person, business, or government entity relating to COVID-19 loans;

e. Information and records relating to payments or compensation paid or received for preparing or in any way assisting any person or business with COVID-19 loans;

f. Communications relating to payments or compensation paid or received for preparing or in any way assisting any person or business with COVID-19 loans;

g. Information and records relating to individuals or businesses referred to **Porter** or any other person, including, but not limited to, co-conspirators, or both, so that **Porter** or another person, or both, could prepare or in any way assist with COVID-19 loans;

h. Communications with or relating to individuals or businesses referred to **Porter** or any other person, including, but not limited to, co-conspirators, or both, so that **Porter** or another person, or both, could prepare or in any way assist with COVID-19 loans;

i. Communications relating to referrals made to or by **Porter** or any other person, including, but not limited to, co-conspirators, or both, concerning COVID-19 loans;

j. Information and records relating to individuals or businesses for whom **Porter** or any other person, including, but not limited to, co-conspirators, or both, prepared or in any way assisted with COVID-19 loans;

k. Communications with or relating to individuals or businesses for whom **Porter** or any other person, including, but not limited to, co-conspirators, or both, prepared or in any way assisted with COVID-19 loans;

l. Information and records relating to the creation or use of email addresses that were listed on applications for COVID-19 loans;

m. Information and records relating to services, equipment, or goods provided to any persons or businesses for whom **Porter** or any other person, including, but not limited to, co-conspirators, or both, prepared or in any way assisted with COVID-19 loans;

n. Tax records relating to any persons or businesses for whom **Porter** or any other person, including, but not limited to, co-conspirators, or both, prepared or in any way assisted with COVID-19 loans;

o. Communications relating to tax records of any persons or businesses for whom **Porter** or any other person, including, but not limited to, co-conspirators, or both, prepared or in any way assisted with COVID-19 loans;

p. Communications containing or in any way relating to the preparation, creation, or falsifying of records for any persons or businesses for whom **Porter** or any other person, including, but not limited to, any co-conspirators, or both, prepared or in any way assisted with COVID-19 loans;

q. Financial institution records, including, but not limited to, account applications, account statements, transaction histories, loan records, and correspondence to or from a financial institution;

r. Communications containing or in any way relating to identification documents, including, but not limited to, driver's licenses and state ID cards, of any person for whom **Porter**

or any other person, including, but not limited to, co-conspirators, or both, prepared or in any way assisted with COVID-19 loans;

s. Records and information that constitutes evidence concerning persons who collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the violations described above, including records that help reveal their identity or whereabouts;

t. Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner and/or user;

u. Evidence indicating the account owner's and/or user's state of mind as it relates to the crimes under investigation;

v. The identity of the person(s) who created and/or used the account, including records that help reveal the whereabouts of such person(s); and

w. The identity of the person(s) who communicated with the account owner and/or user about matters relating in any way to any of the foregoing, as well as activities in furtherance thereof, including records that help reveal their whereabouts.